IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| CALVIN EDMONDS, | ) | C/A No. 4:06-1944-GRA-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| SOUTH CAROLINA DEPT. OF | ) | |
| CORRECTIONS; HENRY McMASTER, | ) | |
| ATTORNEY GENERAL OF THE STATE | ) | |
| OF SOUTH CAROLINA; AND WARDEN, | ) | |
| LEE CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

Petitioner, Calvin Edmonds, ("petitioner/Edmonds"), is an inmate in the custody of the South

Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on July 5, 2006.  Respondents filed a motion

for summary judgment on November 20, 2006, along with supporting memorandum. The

undersigned issued an order filed November 21, 2006, pursuant to Roseboro v. Garrison, 528 F.2d

309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the

possible consequences if he failed to respond adequately. Petitioner filed a response in opposition

of respondents' motion for summary judgment on December 29, 2006.

---

[1] This habeas corpus case was automatically referred to the undersigned United States
Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02,
DSC.  Because this is a dispositive motion, this report and recommendation is entered for review
by the district judge.

# I.  PROCEDURAL HISTORY

The procedural history as set out by the respondents has not been seriously disputed by the petitioner. Therefore, the undisputed procedural history as stated by the respondents is set forth herein.

Calvin Edmonds, #273383, (petitioner) is presently confined in the Lee Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Richland County Clerk of Court. The Richland County Grand Jury indicted petitioner at the September 2000 term of court for armed robbery (00-GS-40-52779). **App. pp. 383-85**. Douglas Stricker, Esquire, represented him on this charge. On March 5-7, 2001, he received a jury trial before the Honorable R. Alison Lee. The jury convicted him as charged and Judge Lee sentenced him to life imprisonment without the possibility of parole. **App. pp. 1-316**.

Petitioner timely served and filed a notice of appeal. Senior Assistant Appellate Defender Wanda H. Haile represented petitioner on appeal. On February 15, 2002, petitioner filed his Final Brief of Appellant, in which he presented the following issues for review:

> 1.  The lower court erred in allowing prejudicial prior bad act testimony into evidence at trial.
>
> 2.  The lower court erred in failing to charge the jury on the lesser offense of common law robbery.

**App. pp. 317-29**. The State filed a Final Brief of Respondent on January 16, 2002. Assistant Attorney General W. Rutledge Martin represented the State on appeal. **App. pp. 330-43**.

On August 20, 2002, the South Carolina Court of Appeals affirmed petitioner's conviction in an unpublished Opinion. *State v. Edmonds*, Op. No. 2002-UP-530 (S.C. Ct. App., filed August 28, 2002). **App. pp. 344-45**. The South Carolina Court of Appeals sent the Remittitur to the

Richland County Clerk of Court on September 16, 2002. Petitioner filed a *pro se* Post-Conviction

Relief (PCR) Application (02-CP-40-5605) on November 15, 2002, in which he alleged the

following grounds for relief:

> 1.    Ineffective assistance of counsel; and
>
> 2.    Due process violation.

**App. pp. 346-51**. The State filed its Return on December 9, 2003. **App. pp. 352-56**

The Applicant then submitted an undated "Amendment Application Allegations and

Memorandum of Law for Post-Conviction Relief," in which he alleged the following further grounds

for relief, quoted verbatim:

> 1.    The lower court erred in allowing prejudicial prior bad act
>        testimony into evidence at trial.
>
> 2.    The lower court erred in failing to charge the jury on the
>        lesser offense of common law robbery.
>
> 3.    The lower court lacked subject matters (sic) jurisdiction to
>        convicted (sic) Applicant for Arm Robbery (sic) w[h]ere
>        there's no Affidavit to prove when a grand juror (sic) was
>        convened. Also, to let the Applicant know what he must be
>        prepare[d] to stand on trial for.
>
> 4.    The lower court erred in denying Applicant Motion to
>        impanel - A jury to determine whether Applicant should
>        receive (sic) life without parole.
>
> 5.    The lower court erred in denying Applicant Motion to
>        invaildate (sic) the sentence of life without parole on violation
>        of Ex Post facto in denying motion.

**See Amendment.**

The Honorable Paul M. Burch held an evidentiary hearing into the matter on September 8,

2004, at the Richland County Courthouse. Petitioner was present at the hearing; and Tara D.

Shurling, Esquire, represented him. Assistant Attorney General Lakesha W. Jeffries represented the State. Petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Mr. Strickler. **App. pp. 357-76**.

On October 6, 2004, Judge Burch filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. The Order addresses only the allegations that counsel was ineffective for failing to advise him to testify on his own behalf and for failing to object to the State's references to his aliases. **App. pp. 377-82**. A timely notice of appeal was served and filed.

Assistant Appellate Defender Aileen P Clare represented him in collateral appellate proceedings. On January 28, 2005, petitioner filed a *Johnson* Petition for Writ of Certiorari. The only Question Presented in the *Johnson* Petition was stated as follows:

> Was trial counsel ineffective for failing to challenge a police officer's reference to petitioner's aliases, along with the abbreviation "AKA", which commonly suggests criminal activity.

***Johnson* Petition for Writ of Certiorari at p. 2**. The State filed a letter Return to the *Johnson* Petition for Writ of Certiorari on February 7, 2005. The petitioner filed a *Pro Se* Memorandum Brief, in response to the *Johnson* Petition, on April 27, 2005.

The South Carolina Supreme Court filed an Order on May 3, 2006, in which it denied certiorari and granted counsel's request to withdraw. Petitioner filed a Petition for Rehearing and Rehearing En Banc on May 8, 2006. The South Carolina Supreme Court denied the Rehearing Petition on June 7, 2006, and sent the Remittitur to the Richland County Clerk of Court on the same date.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, petitioner raises the following grounds for

relief, quoted verbatim:

**A. GROUND ONE:**      Ineff. Assis. of Trial Counsels, a 6th Amend. violation. and denial of the right to fair trial.

**SUPPORTING FACTS:**      Pro Se says his Atty. Strickler, fail to argue these issues below. Nos. D,E,F,H,I,J,K,L,M; Pro Se incorperates [sic] these arguments into this claim of ineff. Assist. to support it, under the Strickland Standard, as argued below, and their case laws.

**B. GROUND TWO:**      Ineff. Assist. Appellate counsel on direct appeal Ms. Haile, a 6th Amend. denial under Strickland holdings.

**SUPPORTING FACTS:**      Pro Se says his appellate counsel Ms. Haile, on direct appeal, fail to argue these issues that would more than likely have gotten him relief, Nos. D,E,F,I,J,K,L,M,N,O; all these arguments could have been argued under Courts errors, but Appellate Counsel fail to raise issues - denying him his 6th Amend. rights under, Strickland, and Goodwin, Supra.

**C. GROUND THREE:**      Ineff. Assis. of Appellate Counsel Ms. Clare on PCR Appeal 02-CP-40-05605, denial of 6th Amend. Right.

**SUPPORTING FACTS:**      Pro Se says his Appellate Counsel Ms. Clare, fail to argue these issues below and above in his PCR Appeal, nos. B,D,E,F,J,K,L,M,N,O; he incorperates these arguments into this claim of ineff. Assist. To support it under Strickland standard as argued and see Clark v. U.S., 59 F.3d 296 (2nd Cir. 1995) (appellate counsel claim maybe raised in a writ in our court).

**D. GROUND FOUR:**      Trial Court erred by allowing state to envoke [sic] the Christian beliefs of Jurys by holding and referring to Bible to envoke their passion.

**SUPPORTING FACTS**:    Pro Se states Solicitor did provoke the passion of the Jury, by the use of the Bible, and making reffers to it, See T.Tr. Ps. 262-264 lines 1-7, which denied him a fair trial it prejudice him, caused jury to act for the church and this was improper arguments. And ineff. Assist. Counsel on trial and appellate counsels denied pro se his 6th Amend. Rights under Strickland standard.

**E. GROUND FIVE:**    A conflict of Interest existed with trial Attorneys, by them representing State's witness - Pro Se's codefendant and accuser, violation of his 6th Amend. Rights to due process and conflict free representation and fair trial.

**SUPPORTING FACTS:**    Trial Attorneys represented codefendant at the time of charges, which created a conflict of interest, see T.Tr. 72 lines 15-25 as proof they represented her. Court should have given pro se the new attorney and let codefendant kept the trial counsels. These acts by court did not cure the conflict or trained counsels they had handled her charges to help her against pro se. This act denied him of his 6th Amend. Rights to conflict free counsel. And State paid them to counsel her and made then an arm of the State also a serious issue. . .

   Appellate Counsel Haile should Have raised. . . .

**F. GROUND SIX:**    State Fail to put Forth Evidence that Pro Se had a gun, to prove Armed Robbery as required  . . .  denying him due process to have the charge proven under the 6th Amend. Of the U.S. Const. And the 14th Amend.

**SUPPORTING FACTS**:    State fail to prove Pro Se had a 9 MM gun, by not putting up SLED report, or Richland County Sheriff report [saying he owned this gun said victim Homes]. Nor did they go and check at the place where Ms. Hooper said it was sold at. This was acturely [sic] withholding evident they were required to go and got. They never even put up the company report where homes was to work as a security guard to prove such a gun was in fact taken and sold. State lack proof of armed robbery. As proof no evidence produced, which

had to be to convict, the said gun was nonexisting was the reason none of these reports were produced. . .

**G. GROUND SEVEN:**    Court's charge to Jury was an unconstitutional and misleading and confusing, that denied Pro Se due process and fair trial under the 6th and 14th Amend. of the U.S. Const.

**SUPPORTING FACTS:**    The charge to the Jurys to find Pro Se guilty was unconstitutional, because it lack[ed] the offense of common law robbery by court refusal to give it. . .

**H. GROUND EIGHT:**    Court erred Allowing prior bad acts to be used at trial, calling Pro Se Character into issue, denying him due process and fair trial under the 6th Amend. And 14th Amend. And prejudice him before jury without evidence.

**SUPPORTING FACTS:**    Pro Se states he wasn't charged with these crimes allowed before the jury of drugs, being a pimp of Ms. Hooper's to prostitution and selling stolely [sic] items from Mr. Homes. State put no such documentation proof up to prove such charges such as arrests. State damaged his character. . . .

**I. GROUND NINE:**    Pro Se denied due process and fair trial, by State bring out and using his aliases names, with "AKA", which suggests he had a Police record, and criminal activitys. Was at foot, placing his character in issue a second time, prejudicing him before Jury ...

**SUPPORTING FACTS:**    Pro Se states there was no reason for Officer Barns to repeat Pro Se's aliases in order to establish his identity and "AKA", and was done to identify him as a criminal only, as having a past record or arrests, which prejudice Pro Se because jury based its verdict on inadmissable character evidence. ...

**J. GROUND TEN:**    State vouched for the credibility of a witness by the words [it's the truth] which denied Pro Se due process and fair trial, and was commentting on State's witnees testimonys violating his 6th and 14th Amend and

7

injected State's belief and personal opinion into jury's decision.

**SUPPORTING FACTS:** State was allowed by court and trial atty., to vouch for codefendant's testimony in closing argument as the truth, making every word she testified to as true . . . Solicitor commented on Mr. Holmes's credibility also with these words causing jury to convict pro se wrongly and denied him due process and fair trial and his 6th amend. Rights to ineffective assistance of counsel to. . . and commenting on these state's witnesses also was commenting on all (5) other state witnesses testimony . . .

**K. GROUND ELEVEN:** There was a Neil v. Bigger ID violation, and the line-ups were tainted by codefendant's being allowed to influence alleged victims identifying pro se.

**SUPPORTING FACTS:** There was no ID by said victim. Mr. Holmes. until codefendant was arrested and court denied pro se due process by failing to suppress the court ID, never even give a rules as proof. . . .and see Atty Strikler's arguments T.Tr. P. 56 lines 11-14. See T.tr. P. 46 lines 20-23 at (in camera) state witness Holmes admits he was focus on gun. See invest. Barnes testimony t. tr. p 55 Lines 1-25 about ID. . . .There was no Iding pro se until the arrest of codefendant Hooper then a 3rd line up came in to play which now the ID was tainted. Which prejudice pro se and placing them before the jury also let them know he had a prior record. . .

**L. GROUND TWELVE:** State brought Pro Se had a prior criminal record, by show the line-ups, mug- shots, denying him a fair trial under the 6th Amend. of the 14 amend.

**SUPPORTING FACTS:** Court and Atty. Strickler, allowed Solicitor to put up the mugshots of the lineups, which let the jury know he had more than likely been arrested before for his mugshot to be on file. See T. Tr. Ps. 36, 51, 114, 117, as proof these acts did prejudice him and denied him fair trial under the 6th Amend. Plus was another comment on his character by the back door by

8

Solicitor.. . . Pro se says by Mug-shots being used were the same as state using his prior record to convict him by the back door reference to jury that prejudice him and denied him fair trial. Without objections by counsel Strickler was a 6th Amend. Violation of ineff. Assist. Of Counsel.

**M. GROUND THIRTEEN:** State vouched for the alleged victim Mr. Homes by making reference [that he would not come into court and put his hand on the Bible and worry about testifying to 12 jurys, denied him a fair trial and prejudice him, and caused convictions and denial of 6th Amend. And 14th Amend. A improper argument.

**SUPPORTING FACTS:** Solicitor vouched for the said victim by saying Mr. Homes [If he's been up to no good down there and he's going to have to worry about coming in with his hand on this Bible and testifying before twelve jurors like yourself]  . . .  which was commenting on all Holme's testimony as the Gospel Truth. Meaning he would not lie by placing his hand on the bible and he's going to worry about God punishing him if he does. Which called up in the jurys Christian belief again and their passion wrongly. When court knows 1000's of people lie after swearing on the bible in courts a proven fact through out history. Court and attorney Strickler fail to correct this vouching and move for mistrial are instruction for court to jury to not consider these arguments but there was no way to do so once heard and uncorrected. Which prejudice pro se badly and caused convictions wrongly.

**N. GROUND FOURTEEN:** Jury fail to deliberate Pro Se's case for proper verdict, denying him due process and fair trial under the 6th Amend. of the U.S. Const.

**SUPPORTING FACTS:** The Jury only were out less than 25 minutes to find Pro Se guilty, and part of that time was going to jury room and back. So they only took 12 to 15 minutes, which mean's they did part of their finding him guilty before ordered to. Which denied pro se due process and fair trial under the 6th Amend.

**O. GROUND FIFTEEN:** Was there a Ring v. Arizona violation by court not allowing a jury to find agg[r]avating circumstance, and that he had committed prior crimes to receive life without parole, and this denial of due process, and his 6th Amend. was denial of a fair trial.

**SUPPORTING FACTS:** Pro Se states his Atty. Strickler, move for court to pick and set a jury to let them find if Pro Se had a record prior to this charge to see if he should get life without parole. . . court also erred by failing to set aside the life without parole because it violates the equal protection clause. . . court also erred by failing to invalidate the sentence of life without parole because it violates the separation of power doctrine of both the state and the judiciary to exercise their independent judgement to hand out a sentence. . . court continued on to violate pr se's rights to be sentenced equally to the same as others when court violated the ex post facto clause by applying his prior crimes to his now new charge and conviction which violates ex post facto because the new law came after the 1992 prior crime. . . Each time court denied pro se arguments to be treated equally as others and was deny equal protection and due process of law under the 14th Amend. . . .

(Petition).

### III.  SUMMARY JUDGMENT

On November 20, 2006, the respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal

10

construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner has failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## IV.  STANDARD OF REVIEW

Since Edmonds filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review.").  Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

## V.  DISCUSSION AS TO PROCEDURAL BAR

A.  Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1.  Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions.  Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States."  The statute states in part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)   An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)   A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241,251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68,221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann.§17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or

14

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

Respondents assert that the exhaustion request is technically met in this case. The undersigned agrees.

### 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

15

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See Murray v. Carrier, 477 U.S.478, 496 (1986).

### 3.  Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an

16

instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997); cert.denied, 118 S.Ct. 102 (1997) citing Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. Murray v. Carrier, 477 U.S. 478 (1986); Clozza v. Murray, 913 F.2d 1092 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991); and Clanton v. Muncy, 845 F.2d 1238 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

17

In the case of <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VI.  MERITS

### A.     GROUNDS TWO, FOUR, FIVE, SIX, SEVEN, EIGHT, NINE, TEN,   ELEVEN, TWELVE, THIRTEEN, FOURTEEN, AND FIFTEEN

The wording and lay out of the pro se petition is confusing. Thus, the undersigned will attempt to first address all claims respondents argue are procedurally defaulted.

**B. GROUND TWO:**     Ineff. Assist. Appellate counsel on direct appeal Ms. Haile, a 6th Amend. denial under Strickland holdings.

**SUPPORTING FACTS**:     Pro Se says his appellate counsel Ms. Haile, on direct appeal, fail to argue these issues that would more than likely have gotten him relief, Nos. D,E,F,I,J,K,L,M,N,O; all these arguments could have been argued under Courts errors, but Appellate Counsel fail to raise issues - denying him his 6th Amend. rights under, Strickland, and Goodwin, Supra.

**D. GROUND FOUR**:     Trial Court erred by allowing state to envoke the Christian beliefs of Jurys by holding and referring to Bible to envoke their passion.

**SUPPORTING FACTS**:    Pro Se states Solicitor did provoke the passion of the Jury, by the use of the Bible, and making reffers to it, See T.Tr. Ps. 262-264 lines 1-7 , which denied him a fair trial it prejudice him, caused jury to act for the church an this was improper arguments. And ineff. Assist. Counsel on trial and appellate counsels denied pro se his 6th Amend. Rights under Strickland standard.

**E. GROUND FIVE:**    A conflict of Interest existed with trial Attorneys, by them representing State's witness - Pro Se's codefendant and accuser, violation of his 6th Amend. Rights to due process and conflict free representation and fair trial.

**SUPPORTING FACTS:**    Trial Attorneys represented codefendant at the time of charges, which created a conflict of interest, see T.Tr. 72 lines 15-25 as proof they represented her. Court should have given pro se the new attorney and let codefendant kept the trial counsels. These acts by court did not cure the conflict or trained counsels they had handled her charges to help her against pro se. This act denied him of his 6th Amend. Rights to conflict free counsel. And State paid them to counsel her and made then an arm of the State also a serious issue. . .
   Appellate Counsel Haile should Have raised. . . .

**F. GROUND SIX**:    State Fail to put Forth Evidence that Pro Se had a gun, to prove Armed Robbery as required ... denying him due process to have the charge proven under the 6th Amend. Of the U.S. Const.. And the 14th Amend.

**SUPPORTING FACTS**:    State fail to prove Pro Se had a 9 MM gun, by not putting up SLED report, or Richland County Sheriff report [saying he owned this gun said victim Homes]. Nor did they go and check at the place where Ms. Hooper said it was sod at. This was acturely withholding evident they were required to go and got. They never even put up the company report where homes was to work as a security guard to prove such

a gun was in fact taken and sold. State lack proof of armed robbery. As proof no evidence produced, which had to be to convict, the said gun was nonexisting was the reason none of these reports were produced. . .

**G. GROUND SEVEN:**    Court's charge to Jury was an unconstitutional and misleading and confusing, that denied Pro Se due process and fair trial under the 6th and 14th Amend. of the U.S. Const.

**SUPPORTING FACTS:**    The charge to the Jurys to find Pro Se guilty was unconstitutional, because it lack[ed] the offense of common law robbery by court refusal to give it. . .

**H. GROUND EIGHT:**    Court erred Allowing prior bad acts to be used at trial, calling Pro Se Character into issue, denying him due process and fair trial under the 6th Amend. And 14th Amend. And prejudice him before jury without evidence.

**SUPPORTING FACTS:**    Pro Se states he wasn't charged with these crimes allowed before the jury of drugs, being a pimp of Ms. Hooper's to prostitution and selling  stolely items from Mr. Homes. State put no such documentation proof up to prove such charges such as arrests. State damaged his character. . . .

**I. GROUND NINE:**    Pro Se denied due process and fair trial, by State bring out and using his aliases names, with "AKA", which suggests he had a Police record, and criminal activitys. Was at foot, placing his character in issue a second time, prejudicing him before Jury ...

**SUPPORTING FACTS:**    Pro Se states there was no reason for Officer Barns to repeat Pro Se's aliases in order to establish his identity and "AKA", and was done to identify him as a criminal only, as having a past record or arrests, which prejudice Pro Se because jury based its verdict on inadmissable character evidence. ...

20

**J. GROUND TEN:** State vouched for the credibility of a witness by the words [it's the truth] which denied Pro Se due process and fair trial, and was commentting on State's witnees testimonys violating his 6th and 14th Amend and injected State's belief and personal opinion into jury's decision.

**SUPPORTING FACTS:** State was allowed by court and trial atty., to vouch for codefendant's testimony in closing argument as the truth, making every word she testified to as true ... Solicitor commented on Mr. Holmes's credibility also with these words causing jury to convict pro se wrongly and denied him due process and fair trial and his 6th amend. Rights to ineffective assistance of counsel to. . . and commenting on these state's witnesses also was commenting on all (5) other state witnesses testimony . . .

**K. GROUND ELEVEN:** There was a Neil v. Bigger ID violation, and the line-ups were tainted by codefendant's being allowed to influence alleged victims identifying pro se.

**SUPPORTING FACTS:** There was no ID by said victim, Mr. Holmes until codefendant was arrested and court denied pro se due process by failing to suppress the court ID, never even give a rules as proof. . . .and see Atty Strikler's arguments T.Tr. P. 56 lines 11-14. See T.tr. P. 46 lines 20-23 at (in camera) state witness Holmes admits he was focus on gun. See invest. Barnes testimony t. tr. p 55 Lines 1-25 about ID. . . .There was no Iding pro se until the arrest of codefendant Hooper then a 3rd line up came in to play which now the ID was tainted. Which prejudice pro se and placing them before the jury also let them know he had a prior record. . .

**L. GROUND TWELVE:** State brought Pro Se had a prior criminal record, by show the line-ups, mug- shots, denying him a fair trial under the 6th Amend. of the 14 amend.

**SUPPORTING FACTS**: Court and Atty. Strickler, allowed Solicitor to put up the mugshots of the lineups, which let the jury know he had more than likely been arrested before for his

mugshot to be on file. See T. Tr. Ps. 36, 51, 114, 117, as proof these acts did prejudice him and denied him fair trial under the 6th Amend. Plus was another comment on his character by the back door by Solicitor.. . . Pro se says by Mug-shots being used were the same as state using his prior record to convict him by the back door reference to jury that prejudice him and denied him fair trial. Without objections by counsel Strickler was a 6th Amend. Violation of ineff. Assist. Of Counsel.

**M. GROUND THIRTEEN:** State vouched for the alleged victim Mr. Homes by making reference [that he would not come into court and put his hand on the Bible and worry about testifying to 12 jurys, denied him a fair trial and prejudice him, and caused convictions and denial of 6th Amend. And 14th Amend. A improper argument.

**SUPPORTING FACTS:** Solicitor vouched for the said victim by saying Mr. Homes [If he's been up to no good down there and he's going to have to worry about coming in with his hand on this Bible and testifying before twelve jurors like yourself] ... which was commenting on all Holme's testimony as the Gospel Truth. Meaning he would not lie by placing his hand on the bible and he's going to worry about God punishing him if he does. Which called up in the jurys Christian belief again and their passion wrongly. When court knows 1000's of people lie after swearing on the bible in courts a proven fact through out history. Court and attorney Strickler fail to correct this vouching and move for mistrial are instruction for court to jury to not consider these arguments but there was no way to do so once heard and uncorrected. Which prejudice pro se badly and caused convictions wrongly.

**N. GROUND FOURTEEN:** Jury fail to deliberate Pro Se's case for proper verdict, denying him due process and fair trial under the 6th Amend. of the U.S. Const.

**SUPPORTING FACTS:** The Jury only were out less than 25 minutes to find Pro Se guilty, and part of that time was going to jury room and back. So they only took 12 to 15 minutes, which mean's they did part of their finding him guilty

before ordered to. Which denied pro se due process and fair trial under the 6th Amend.

**O. GROUND FIFTEEN:**   Was there a Ring v. Arizona violation by court not allowing a jury to find agg[r]avating circumstance, and that he had committed prior crimes to receive life without parole, and this denial of due process, and his 6th Amend. was denial of a fair trial.

**SUPPORTING FACTS:**   Pro Se states his Atty. Strickler, move for court to pick and set a jury to let them find if Pro Se had a record prior to this charge to see if he should get life without parole. . . court also erred by failing to set aside the life without parole because it violates the equal protection clause. . . court also erred by failing to invalidate the sentence of life without parole because it violates the separation of power doctrine of both the state and the judiciary to exercise their independent judgement to hand out a sentence. . . court continued on to violate pr se's rights to be sentenced equally to the same as others when court violated the ex post facto clause by applying his prior crimes to his now new charge and conviction which violates ex post facto because the new law came after the 1992 prior crime. . . Each time court denied pro se arguments to be treated equally as others and was deny equal protection and due process of law under the 14th Amend. . . .

In their memorandum in support of their motion for summary judgment, respondents argue issues (B) two (D) four, (E) five, (F) six, (G) seven, (H) eight, (I) nine, (J) ten, (K) eleven, (L) twelve, (M) thirteen (N) fourteen, and (O) fifteen are procedurally barred whether raised as allegations of ineffective assistance of counsel in that none of these issues/allegations were presented to the state supreme court as claims of ineffective assistance of counsel or the allegations were not presented to the state court of appeals on direct appeal. Respondents further assert that petitioner cannot show cause for or prejudice resulting from the default. Respondents argue that

23

most of the allegations were presented as substantive allegations of trial court error in the April 2005 *Pro se* Memorandum for writ of certiorari in collateral appeal.

As to Ground two, respondents assert petitioner asserts a myriad of allegations relating to supposed ineffective assistance of appellate counsel, Ms. Haile, on direct appeal. However, none of these allegations were presented to the state supreme court on certiorari following the denial of PCR. As a result, respondents assert that petitioner defaulted on any federal claim in state court by failing to present it to the state supreme court. Respondents submit petitioner cannot meet his burden to overcome the default particularly where he had the opportunity to litigate these allegations and obtain a ruling thereon in the PCR court but did not do so.

As to Ground four, respondents assert he "cannot show cause for the default because counsel, who was not constitutionally ineffective could have but did not object to the portions of the State's closing argument, which petitioner now challenges." Therefore, the argument would not have been considered by the state court of appeals.  Further, respondents assert that the reference to the Bible was merely a reference to the fact that the witness had been sworn to testify truthfully, a fact which was observed by the jury with respect to each witness who testified and this reference was part of a broader argument suggesting that the prosecution's witnesses had testified truthfully. Respondents assert the argument was proper and the comments were obviously made in anticipation of the argument of petitioner's trial counsel wherein counsel vigorously attacked the credibility of the State's witnesses.

24

Respondents argue petitioner has defaulted in ground five because it was not raised at trial and on direct appeal, since the record discloses the prior representation. Alternatively, respondents argue it is barred because it was not raised to and ruled upon by the PCR court.

As to Ground six, respondents assert petitioner procedurally defaulted on this allegation on direct appeal in state court by failing to present the state court of appeals with the same argument. Respondents assert petitioner cannot show cause because trial counsel moved for a directed verdict at trial and his motion was denied. "Counsel could have, but did not state a constitutional basis for his motion." Further, respondents assert that the argument could have been raised at trial or on direct appeal but because it involves a challenge to the sufficiency of the evidence, it was not proper in PCR even if it had been presented to the PCR judge. Further, respondents argue there would have been no prejudice to the default because there was more than sufficient evidence to convict petitioner of armed robbery.

As to Grounds seven and eight, respondents argue that while petitioner did challenge the admission of evidence of bad acts by him at trial and on appeal, he procedurally defaulted upon his due process claim as he did not set forth a federal argument or that it was a matter of constitutional law. Thus, the due process violation was barred from review by the state court of appeals in that Rule 208(b)(1)(B), SCACR, requires an appellant's initial brief to contain a statement of each of the issues presented for review and ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal. Respondents assert that issues seven and eight as stated petitioner made no specific reference to any federal constitutional claim and just set out conclusory claims. Thus, respondents assert the federal challenge to the trial judge's ruling was defaulted on direct

25

appeal. Respondents argue that petitioner cannot show cause and prejudice for overcoming the default because the issues are actually ones of state law.

As to Ground nine, respondents argue this ground was not raised as a substantive issue on direct appeal in state court and is thus procedurally defaulted and there is no prejudice because it is clear that Hooper had already testified as to his use of an alias; the witnesses interviewed by the defense investigator knew him by a "street name"; there was no effort by the prosecution to imply anything sinister from these aliases; and nothing about the aliases at issue were inherently prejudicial.

As to Ground ten, respondents assert petitioner cannot overcome the cause of the default in that it could have been raised at trial and on direct appeal but was not and because petitioner failed to obtain a ruling on this allegation from the trial court. Respondents further assert there is no showing of prejudice in that the comments did not constitute impermissible vouching in that the remarks that the jurors did not have any reason to doubt the credibility of the State's witnesses who testified did not suggest that the Assistant Solicitor was relying on information outside the evidence presented at trial and cannot be read as implying that she had access to evidence outside the record.

As to Ground eleven, respondents assert that the issue was not raised on appeal nor before the PCR court. Respondents assert this issue was properly one for direct appeal, not PCR.

As to Grounds twelve and thirteen, respondents assert these allegations were never presented in state court, either on direct appeal or in PCR.

As to Ground fourteen, respondents argue that it was procedurally defaulted because it could have been raised at trial and on direct appeal. Alternatively, respondents argue it was procedurally

defaulted by his failure to obtain a ruling on this allegation from the PCR court and petitioner cannot show cause for or prejudice from the default. Respondents argue he particularly cannot show prejudice from the default because apart from the brevity of its deliberations, there is no evidence that the jury failed to weigh all the relevant evidence in making its determinations. Respondents quote from <u>Segars v. Atlantic Coast Line Railroad Co</u>., 286 F.2d 767 (4th Cir. 1961) that a short period of deliberation by a jury before returning a verdict does not establish the proposition that the jury did not properly perform its duties. Further, respondents argue that the evidence supports the verdict.

As to Ground fifteen, respondents argue petitioner asserts a violation of <u>Ring v. Arizona</u>, 536 U.S. 584 (2002) by the trial court's refusal to have the jury determine whether he should be sentenced to life without parole based on his prior criminal record. Respondents argue that although this allegation was not presented on direct appeal, petitioner improperly raised it in his April 2005 Pro se memorandum. Respondents assert this allegation is procedurally defaulted for the reasons set forth in Ground Fourteen above. Respondents argue petitioner cannot show cause and prejudice from the default.

After reviewing the Order of Dismissal from the PCR court, the undersigned agrees that the above issues that could have been or were presented to the PCR court are procedurally barred. The PCR Court only addressed two issues in its order of dismissal. It addressed the issue petitioner raised that trial counsel was ineffective for failing to advise him to testify on his own behalf and for failing to object to the state's references to his aliases. A review of the PCR Order of Dismissal reveals the PCR Judge found the following:

This Court finds that the Applicant has failed to meet his burden of proof as established under Strickland v. Washington. This Court finds the testimony of trial counsel credible and the Applicant's testimony not credible. Trial counsel testified that he discussed with the Applicant the pros and cons of the Applicant testifying. Trial counsel provided that he explained to the Applicant that the State would impeach him with his criminal record and that in his opinion that would ruin his credibility with the jury. Trial counsel testified that he did not coerce or force the Applicant to exercise his right not to take the stand. This Court finds that such advice does not fall below the standard of reasonableness for criminal defense attorneys and finds that the Applicant's ground for relief as to the allegation that trial counsel failed to advise him to testify is without merit. Accordingly, this allegation is denied and dismissed with prejudice.

Further, this Court finds that trial counsel is not ineffective for failing to object to the state's references to the Applicant's aliases. At the trial, the Applicant, Carvin Edmonds, was referenced as Allen Bono and Youngblood by Eric Barnes, the investigator assigned to this robbery. Tiffany Hooper, a co-defendant in this matter also testified at trial that she knew Edmonds by the name Allen Bono. Trial counsel testified that he knew the Applicant occasionally used these aliases. The Applicant himself testified that those were his aliases. Trial counsel testified that he did not object to the State's references to the Applicant's aliases because he did not see the harm in that fact coming out. This Court finds trial counsel's testimony credible and agrees that Applicant was not prejudiced by the State's reference. This Court finds that the Applicant has failed to demonstrate that trial counsel's performance fell below the standard of reasonableness as established under Strickland v. Washington. Further, this Court finds that the Applicant has not demonstrated that he was prejudiced by trial counsel's failure to object. This Court finds that the State's case consisted of overwhelming evidence including the victim's identification and the co-defendant's testimony directly linking the Applicant as a participant. Where there is overwhelming evidence of guilt, a trial counsel's deficient representation will not be prejudicial. Ford v. State, 314 S.C. 245, 42 S.E.2d 604 (1994); see also, Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001). Accordingly, the allegation that trial counsel is ineffective for failing to object to the State's references is without merit, denied and dismissed with prejudice.

(PCR Tr. 377-381).

Further, as previously set out, the only issued raised in the <u>Johnson</u> petition for writ of certiorari from the denial of his PCR was as follows: "Was trial counsel ineffective for failing to challenge a police officer's reference to petitioner's aliases, along with the abbreviation "AKA", which commonly suggests criminal activity?" This issue was denied by the South Carolina Supreme Court. Petitioner did attempt to raise several issues in his pro se memorandum in response to the <u>Johnson</u> petition to the South Carolina Supreme Court. However, the issues presented in the *pro se* memorandum were predicated upon error by the trial judge/lower court and, thus, these substantive allegations, as presented to the state supreme court in the *pro se* petition for writ of certiorari would not have been considered. In his habeas petition, petitioner asserts that he was denied due process by the State bringing out his aliases names with AKA which placed his character at issue (Ground nine). In his habeas petition, petitioner does not present the aliases argument (Ground nine) in the context of ineffective assistance of counsel but alleges it as a due process violation. It was only raised below as an ineffective assistance of counsel claim. A state prisoner must give the state courts one full opportunity to resolve any constitutional issues. This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles associated with each claim." The ground must "be presented face-up and squarely." <u>Longworth v. Ozmint</u> 377 F.3d 437 (4th Cir. 2004) *quoting* <u>Baker v. Corcoran</u>, 220 F. 3d 276, 289 (4th Cir. 2000) and <u>Mallory v. Smith</u>, 27 F.3d 991, 995 (4th Cir. 1994). Thus, this issue is procedurally barred from habeas corpus review. Petitioner has not presented or addressed the argument of cause to overcome the procedural default in his response to respondents' motion for summary judgment. As previously discussed, it is petitioner's burden to raise cause and prejudice or actual innocence. A court need not consider

cause and prejudice or actual innocence if not asserted by the petitioner. See Burket v. Angelone, 208 F.3d 172, 183 n.10 (4th Cir. 2000); United States v. Pregent, 190 F.3d 279, 384 n.5 (4th Cir. 1999); Weeks v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998); Fitzgerald v. Greene, 150 F3d 357, 367 (4th Cir. 1998); Williams v. French, 146 F.3d 203, 208, n.6 (4th Cir. 1998); Smith v. Moore, 137 F.3d 808, 821 n. 13 (4th Cir. 1998); Gilbert v. Moore, 134 F.3d 642, 565 n.10 (4th Cir. !998). Thus, the undersigned does not address cause and prejudice.

As discussed previously, petitioner raised two issues on direct appeal: trial court error for allowing prejudicial bad act testimony into evidence at trial and the lower court erred in failing to charge the jury on the lesser offense of common law robbery. In his habeas petition, petitioner alleges that the court erred by allowing prior bad acts to be used at trial denying him due process (Ground eight). However, petitioner is attempting to assert this claim as a violation of due process when it is a matter of state law. It was not addressed on direct appeal or by the state court of appeals as a violation of due process. The exhaustion requirement demands that the petitioner "do more than scatter some makeshift needles in the haystack of the sate court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick" Mallory, supra *quoting* Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988). The decision of the state court of appeals only addresses the argument in terms of state law not federal law. Further, this is an issue of state law which a state court's decision on a question of state law is binding in federal court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Thomas v. Davis, 192 F.3d 445, 449 n. 1 (4th Cir. 1999). This issue involves a decision based on state law and the state court and the state court of

30

appeals denied any relief on this issue. Therefore, this issue would be barred in that it was not presented as a constitutional violation on direct appeal and second it would be denied for habeas corpus review because it involves a question of state law and a state court's decision on a question of state law is binding in federal court.

In his habeas petition, petitioner also alleges that the charge to the jury was unconstitutional because it lacked the charge of common law robbery (Ground seven). This issue was not addressed on direct appeal as a violation of his constitutional rights but was addressed as a violation of state law. The exhaustion requirement demands that the petitioner "do more than scatter some makeshift needles in the haystack of the sate court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick" <u>Mallory</u>, <u>supra</u> *quoting* <u>Martens v. Shannon</u>, 836 F.2d 715, 717 (1st Cir. 1988). The decision of the state court of appeals only addresses the argument in terms of state law not federal law. This issue could have been raised at trial or on direct appeal. Therefore, this issue is procedurally barred. Petitioner has not asserted cause to overcome the procedural default. It is petitioner's burden to raise cause and prejudice or actual innocence. A court need not consider cause and prejudice or actual innocence if not asserted by the petitioner. See <u>Burket v. Angelone</u>, <u>supra</u>. Thus, the undersigned does not address cause and prejudice.

The undersigned finds that all other issues not addressed above (Grounds two, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, and fifteen) are procedurally barred in that they were either not ruled upon by the PCR judge, not presented in the <u>Johnson</u> petition, or not presented on direct appeal. In his response in opposition to summary judgment, petitioner has failed

31

to argue cause to overcome the default. *See* Burket, supra. Therefore, it is recommended that respondents' motion for summary judgment be granted as to these issues.

## GROUND THREE

Petitioner raised the following issue under ground three in his habeas petition:

**C. GROUND THREE:**    Ineff. Assis. of Appellate Counsel Ms. Clare on PCR Appeal 02-CP-40-05605, denial of $6_{th}$ Amend. Right.

**SUPPORTING FACTS:**    Pro Se says his Appellate Counsel Ms. Clare, fail to argue these issues below and above in his PCR Appeal, nos. B,D,E,F,J,K,L,M,N,O; he incorperates these arguments into this claim of ineff. Assist. To support it under Strickland standard as argued and see Clark v. U.S., 59 F.3d 296 (2nd Cir. 1995) (appellate counsel claim maybe raised in a writ in our court).

The undersigned recommends that this issue be dismissed as "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254." 28 U.S.C.A. §2254(i)(West Supp. 2001). Moreover, deficiencies in a post-conviction proceeding are not cognizable under 28 U.S.C. §2254. Heyward v. Burtt, 2007 WL 2021888 (D.S.C. July 6, 2007) *citing* Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990 (1987); and Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988). Further, a habeas court cannot grant relief based on errors occurring during state collateral review proceedings. See Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998). Accordingly, it is recommended that respondents' motion for summary judgment be granted as to ground three.

## VI. CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document # 11) be GRANTED.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 17, 2007
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**